# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CasKim, LLC and Pacman
Properties, LLC,

                Plaintiffs,

                          Case No. 1:22-cv-1864-MLB

v.

Carver Bible College, Inc.,

                Defendant.

_____/

## **ORDER**

Plaintiffs move for partial summary judgment on their claim for specific performance, on Defendant's affirmative defenses, and on Defendant's counterclaims for breach of contract and attorneys' fees. (Dkt. 91.)  For the reasons discussed below, the Court **GRANTS** Plaintiffs' motion.

## I.   Background[1]

In July 2019, Plaintiff Pacman Properties, LLC, loaned Defendant Carver Bible College, Inc., $300,000.  (Dkt. 95-1 ¶¶ 1–2.)  Pacman made the loan pursuant to a promissory note with a maturity date of July 31, 2020.  (*Id.* ¶ 2.)  A 2019 security deed designated property (owned by Defendant) as collateral for the loan.  (*Id.* ¶ 3; Dkt. 91-3 at 12–13, 57–71 (designating the tract of land as described in Exhibit A).)  The 2019 loan agreement required Pacman to make certain disbursements at the closing of the loan, including to remove all existing liens from the property.  (Dkt. 91-3 at 78.)  When the note was due, Defendant owed Pacman $405,000 in principal and accumulated interest.  (Dkt. 95-1 ¶ 5.)  Defendant requested an extension and additional funds.  (*Id.* ¶ 4.)  Pacman agreed, and the parties executed a new loan pursuant to a promissory note.  (*Id.* ¶ 5.)  The 2020 note had a total principal of

---

[1] Defendant did not file a statement of material facts as the Local Rules require.  N.D. Ga. L.R. 56.1(B)(2)(b).  So the Court derives its factual summary from facts Defendant has admitted or has failed to refute or deny in accordance with Local Rule 56.1(B), NDGa.  The Court has disregarded facts that are immaterial, unsupported by citations to evidence, or stated as legal conclusions.  The Court also occasionally pulls facts directly from the evidence provided.

$605,000, which included the original loan balance of $300,000, accrued interest of $105,000 on the original loan, and an additional advance of $200,000.  (*Id.* ¶¶ 4–5.)  The 2020 note was secured by an amendment to the 2019 security deed and had a maturity date of July 31, 2021.  (*Id.* ¶ 6.)  The 2020 loan agreement also required Pacman to disburse the loan proceeds at the closing of the loan for existing liens on the property, including a water bill.  (Dkts. 91-3 at 98; 47-7 at 1.)

Simultaneous to the 2020 note, Defendant entered an "Agreement for the Sale and Leaseback" with CasKim, LLC, an entity affiliated with Pacman.  (Dkts. 95-1 ¶ 8; 91-3 at 12–41.)  The sale agreement stated that, if Defendant failed to repay the 2020 note by its maturity date, Defendant would (i) sell the property to CasKim for $650,000 and (ii) CasKim would lease the property back to Defendant for 20 years.  (Dkts. 95-1 ¶ 8; 91-3 at 13.)  The sale agreement provided that, if Defendant failed to close the sale, CasKim would be entitled to bring suit for specific performance as well as any other remedy available to it.  (Dkts. 95-1 ¶ 10; 91-3 at 16.)  As discussed below, Defendant argues that the sale agreement is unenforceable.

Defendant defaulted on the 2020 note but refused to sell the property to CasKim. (Dkt. 95-1 ¶¶ 11–12.) Pacman thus advertised the property for foreclosure sale in September 2021. (*Id.* ¶ 13.) Defendant asked Pacman to stop the foreclosure so it could complete the sale to CasKim. (*Id.* ¶ 14.) Pacman did so, and Plaintiffs and Defendant executed a settlement agreement in August 2021. (*Id.* ¶ 15; Dkt. 91-3 at 43–52.) The settlement agreement ratified the sale agreement and loan documents. (Dkts. 95-1 ¶ 17; 91-3 at 44–45 ("[Defendant] hereby (i) ratifies and confirms the Sale Leaseback Agreement . . . .").) The settlement agreement contained a "waiver and release" provision, releasing CasKim, Pacman, Plaintiffs' law firm (Schreeder, Wheeler & Flint LLP ("SWF")), and the Escrow Agent from certain claims arising from these transactions. (Dkts. 95-1 ¶ 18; 91-3 at 45.) The settlement agreement also contained a provision stating that Defendant and Pacman "hereby instruct" SWF to pay $60,000 to the City of Atlanta for a water bill. (Dkt. 91-3 at 44.) Like the sale agreement, Defendant argues that the settlement agreement is unenforceable.

Before the scheduled closing of the sale agreement under the settlement agreement, CasKim requested evidence that Defendant had

the required insurance in place.  (Dkt. 95-1 ¶ 19.)  Defendant disclosed that it had not maintain insurance for the property.  (*Id.* ¶ 20.) Defendant could not pay insurance premiums, so it asked CasKim to obtain necessary insurance and amortize the premium into its rental payments.  (*Id.* ¶ 21.)  CasKim agreed to do so.  (*Id.* ¶ 22.)  Defendant then said it could not pay additional rent to cover the cost of insurance. (*Id.* ¶ 23.)  Defendant advised Plaintiffs that it intended to vacate the property.  (*Id.* ¶ 24.)  But three months later, in March 2022, Defendant notified Plaintiffs that it had decided not to execute and deliver the documents to consummate the sale agreement as agreed in the settlement agreement.  (*Id.* ¶ 25.)

In May 2022, Plaintiffs sued Defendant for specific performance, breach of contract, and attorneys' fees arising from Defendant's refusal to sell Plaintiffs the property.  (Dkt. 1.)  Defendant answered, asserting 15 affirmative defenses, and counterclaimed against Pacman for breach of contract, usury, and attorneys' fees.  (Dkt. 47.)  Plaintiffs moved to dismiss Defendant's counterclaims for failure to state a claim.  (Dkt. 54.) Defendant moved for partial summary judgment on its usury counterclaim.  (Dkt. 51.)  The Court granted in part and denied in part

Plaintiffs' Motion to Dismiss—leaving only Defendant's counterclaims for breach of contract and attorneys' fees—and denied as moot Defendant's Motion for Partial Summary Judgment. (Dkt. 107.) Plaintiffs now move for summary judgment on their specific performance claim, on Defendant's affirmative defenses, and on Defendant's counterclaims. (Dkt. 91.)[2]

## II.   Standard of Review

Federal Rule of Civil Procedure 56 says that a Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the

---

[2] Plaintiffs move for summary judgment on Defendant's affirmative defenses. (Dkt. 91 at 11–14.); *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996) (explaining that partial summary judgment may be granted on affirmative defenses). Defendant dedicates no part of its response to Plaintiffs' arguments on its affirmative defenses. (Dkt. 95.) Even still, some of its arguments throughout are related to its defenses. The Court will address them in the context which they are raised, but the Court otherwise **GRANTS** summary judgment on the affirmative defenses to the extent Defendant does not address them. *Burnett v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party.").

outcome of the suit under the governing law." *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).  Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id.* (citation omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." *Anderson*, 477 U.S. at 247–48.  A district court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alteration adopted) (citation omitted).

## III.   Discussion

### A.   Plaintiffs' Specific Performance Claim[3]

Plaintiffs alleged Defendant breached the sale agreement by refusing to execute documents required to sell CasKim the property. (Dkt. 44 ¶ 36.)  They also allege the settlement agreement reaffirmed Defendant's obligations under the sale agreement.   (Dkt. 44 ¶ 34.) Plaintiffs move for summary judgment, asking the Court to direct Defendant to consummate the sale and leaseback of the property. (Dkt. 91 at 1–2.)  Plaintiffs argue that monetary damages are not an

---

[3] Specific performance is a remedy for a breach, not a stand-alone cause of action. *Glob. Digital Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, No. 2019 WL 8323955, at *2 (S.D. Fla. Nov. 27, 2019); *Sexton v. Sewell*, 351 Ga. App. 273, 282 (2019) ("[S]pecific performance is an available remedy for the breach of a contract for the sale of real property[.]").  So Plaintiffs, in essence, bring a cause of action for breach of contract and seek specific performance as a remedy.

adequate legal remedy for breach of a sales contract regarding real property.  (Dkt. 91-1 at 7.)  Plaintiffs add that the sale agreement is in writing, signed by the parties, clear and certain by its terms, and capable of being performed.  (*Id.*)

The elements of a breach-of-contract claim are "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584, 590 (2013) (citing *Norton v. Budget Rent A Car Sys.*, 307 Ga. App. 501, 502 (2010)).  "Specific performance is an extraordinary, equitable remedy, which will be granted only if the complainant does not have an adequate remedy at law."  *Sexton v. Sewell*, 351 Ga. App. 273, 275 (2019).  "It is not a remedy that either party can demand as a matter of absolute right and will not be granted in any given case unless strictly equitable and just."  *Id.*  "As a general rule, a party to a contract may seek specific performance of a contract upon a showing that [monetary] damages recoverable at law would not constitute adequate compensation for another parties' nonperformance."  *Id.* (alteration in original).  "It necessarily follows that, in order to obtain an award of specific performance, the plaintiff must present evidence to

show his 'entitlement to the extraordinary remedy of specific performance' by, inter alia, demonstrating that he has no adequate remedy at law." *Id.* at 276. "[T]he law regards real property 'as sufficiently unique that equity will enforce a contract for its sale or lease.'" *Ayer v. Norfolk Timber Inv., LLC*, 291 Ga. App. 409, 411 (2008).

The Court finds Plaintiffs have met their burden of proving by undisputed evidence that Defendant breached the sale and settlement agreements by failing to sell Plaintiffs the property. *UWork.com, Inc.*, 321 Ga. App. at 590. Although the parties' contractual relationship began with the 2019 loan, the parties ultimately entered a contract for sale of the property (at the same time they entered the 2020 loan agreement). The sale agreement stated that, if Defendant failed to repay the 2020 note by its maturity date, Defendant would (i) sell the property (the tract of land described in Exhibit A to the agreement) to CasKim for $650,000, and (ii) CasKim would lease the property back to Defendant. (Dkts. 95-1 ¶ 8; 91-3 at 12–13, 57–71.) And the settlement agreement expressly ratified the sale agreement. (Dkts. 95-1 ¶ 17; 91-3 at 44.) Defendant does not dispute that it failed to pay the 2020 note or that it

later decided not to execute and deliver the documents to consummate the settlement agreement.  (Dkt. 95-1 ¶¶ 11, 25.)

The Court also finds Plaintiffs have met their burden of proving they do not have an adequate remedy at law for their breach-of-contract claim.  This is because "[i]t is well-established that monetary damages are not an adequate legal remedy where, as here, the contract sought to be enforced involved the sale of unique real property."  *Forsyth Cnty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 637 (2010).  So Defendant must come forward with "specific facts" to show there is a genuine dispute for trial.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  Defendant makes three arguments.[4]  The Court is unpersuaded.

## 1.   Enforceability of the Sale Agreement

Defendant argues the sale agreement is unenforceable because (1) it was not supported by consideration, and (2) the purchase price was unconscionable.  (Dkt. 95 at 7–8.)  Defendant says nothing further about

---

[4] Defendant's arguments about the enforceability of the sale and settlement agreements are sprinkled throughout its response.  For purposes of clarity, the Court addresses all the arguments raised about the agreements here, even if the arguments were raised vis-à-vis its counterclaims.

consideration.   The Court need not consider arguments raised in a perfunctory manner.   *See Bridges v. Morgan*, 2022 WL 342905, at \*4 (11th Cir. Feb. 4, 2022) (parties cannot "raise [an] issue in a perfunctory manner without supporting arguments and authority").[5]

Defendant argues the sale agreement is unconscionable because it sets a purchase price that is less than one third the value of the property. (Dkt. 95 at 7.)   In support of this contention, Defendant cites record evidence from its responses to Plaintiffs' statements of material facts—specifically, a tax bill and testimony from one of its former lawyers, Orinda Smith, that the property is worth "3 to 4 million dollars." (Dkts. 95 at 7; 95-1 ¶¶ 8, 17–18, 26, 28–30, 32, 48, 50.)   But, as noted above, Defendant failed to comply with the Local Rules by filing its own statement of material facts to assert these alleged facts.   N.D. Ga. L.R. 56.1(B)(2)(b).  By merely raising new facts in response to Plaintiffs' statement, Defendant, among other things, deprives Plaintiffs of their

---

[5] The Court recognizes *Bridges* is unpublished and nonbinding.   The Court cites it as instructive nonetheless.   *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

right to respond to a statement of additional material facts as provided for in Local Rule 56.1(B)(3). *See* N.D. Ga. L.R. 56.1(B)(3) ("If respondent provides a statement of additional material facts, then, within the time allowed for filing a reply, the movant shall file a response to each of the respondent's facts."). That, in turn, deprives Plaintiffs of the right to show the asserted fact is inaccurate or immaterial. Since Defendant has not followed the Courts rules, the Court concludes Defendant has failed to present evidence as to the value of the property in relation to the purchase price. *See Mitchell v. Smalley*, 2014 WL 12480029, at *2 n.2 (N.D. Ga. Feb. 6, 2014) (declining to address the additional facts and arguments proffered in the plaintiff's response to defendant's statement of material facts).

But even allowing Defendant to skirt the Local Rules and even considering the facts Defendant asserted in its response to Plaintiffs' statement of material facts, Defendant cannot demonstrate a genuine issue as to whether the property is worth three times the sales price.[6]

---

[6] To be clear, the Court only considers Defendant's factual assertions in its response to Plaintiffs' statement of material facts to the extent they are supported by citation to record evidence. The Court does not consider

Smith's testimony, for example would not permit a jury to infer that fact. Smith testified that, "at one time there was a[n] agent, and the -- I think the sales price of the property started at 3 or 4 million.  I can't remember exactly but it was more than triple what the loan amount was at the time."  (Dkt. 69-1 at 37–38.)  She further explained that "the property was originally being marketed for a few million dollars, and I think the loan amounts -- I can't remember exactly -- the settlement statement was something like 600,000 originally."  (*Id.* at 38.)  She made it clear that the price was "what the real estate agent said the property was approximately worth."  (*Id.*)  But Defendant cites no testimony to indicate there were any offers at that price or that the real estate agent's opinion as to the value was reasonable.  Indeed, Defendant acknowledges that they received no such offers (although they claim Yoav Bitter, Plaintiffs' principal manager, "dissuaded" people from making offers).  (*Id.* at 50.)  Defendant says the tax bill shows that the Fulton County Tax Commissioner valued the property at $3,588,000.  (Dkts. 95 at 7–8; 26-11.)  It appears the bill was from 2021.  It is otherwise unclear to the

---

any assertions that are unsupported by citation to record evidence or raised only in Defendant's response brief.  N.D. Ga. L.R. 56.1(B)(2)(b).

Court what the tax bill means. This evidence—a sales price set by a real estate agent that led to no offers and an unexplained tax bill—does not present facts from which a jury could conclude the property was worth 3 to 4 million dollars.

Going further, even if the Court accepts Defendant's allegations as true, Defendant cites no caselaw to show that the sale agreement was unconscionable because the property may have been worth 3 to 4 million dollars whereas the second loan was for $650,000. For a contract to be found unconscionable under Georgia law, there generally must be *both* procedural and substantive unconscionability. *See NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 773 n. 6 (1996) ("[T]o tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.") In assessing procedural unconscionability, courts consider factors such as "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.* at 771–72 (citations omitted). To determine substantive unconscionability, "courts

have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the contract terms, the allocation of risks between the parties and similar public policy concerns." *Id.* at 772 (citations omitted).  Defendant simply makes no effort whatsoever to apply these standards to this case, let alone to cite any authority to support its claim.  To pursue its unconscionability attack on the sale agreement, Defendant had to establish the materiality of its facts (at the very least) by presenting some legal argument.  The Court will not do the work to fill in Defendant's patently perfunctory argument. *Bridges*, 2022 WL 342905, at *4.  Defendant has not raised an issue of fact on this issue.

### 2.   Enforceability of the Settlement Agreement

Defendant also argues the settlement agreement is unenforceable because it was entered into under duress, is merely an agreement to agree, and sought to accomplish an illegal purpose.  (Dkt. 95 at 7, 20–25.) Regarding duress, Defendant merely declares it acted under duress and offers no additional facts, argument, or legal authority to support the

assertion. (*Id.* at 7.) The Court does not consider duress. *Bridges*, 2022 WL 342905, at *4.

Defendant claims the settlement agreement does not specify essential terms such as the closing date, purchase price, terms of the lease, and "all other matters previously determined in the prior [sale agreement]." (Dkt. 95 at 20–23.) So Defendant says the settlement agreement was nothing more than an unenforceable agreement to agree in the future. Plaintiffs say the settlement agreement did not contemplate the parties entering into a new agreement with new terms but rather incorporated the sale agreement, which provided the terms Defendant claims are missing. (Dkts. 97 at 8–9.) Plaintiffs are correct. The settlement agreement expressly ratified and confirmed the sale agreement, which provided the purchase price, terms of the lease, and when the transaction would close.[7]  (Dkt. 91-3 at 13–14, 44.)   The

---

[7] The sale agreement did not specify a date. It said the transaction should close on the later of: (1) promptly following the maturity date of the Note, or (2) within two business days after the purchaser delivers funds to the Escrow Agent. (Dkt. 91-3 at 13–14.) The lack of a specific closing date is immaterial. *Kennedy v. Droughton Tr.*, 277 Ga. App. 837, 840 (2006) ("The lack of a specific closing date in the contract does not render it too vague and indefinite to be enforced. If a contract does not contain a

settlement agreement explained that Defendant "agree[d] to execute new sale *documents* in connection with the closing." (*Id.* at 44 (emphasis added).) This provision merely contemplates new closing documents. Nothing indicates the provision alters the previous terms of the sale agreement.

Defendant also says the settlement agreement sought to accomplish an illegal purpose—the extraction of a usurious interest rate under Georgia law. (Dkt. 95 at 8–9, 23–25.) Again, Defendant failed to follow the Local Rules and thus presented no facts to support this argument. *Mitchell*, 2014 WL 12480029, at *2. Even considering the improper process Defendant chose to follow (as the Court did above), Defendant asserts only *one* relevant fact with citation to evidence in response to Plaintiffs' statement of facts—its contention that, at the time Pacman made the loans, it knew Defendant would be unable to repay the loans because of the illegal interest charges. (*See, e.g.*, Dkt. 95-1 ¶¶ 51–53.) To support this claim, Defendant cites testimony from Velissa Robinson and Angela Edmond. (*Id.*) Robinson testified that, around November 2020,

specific time for performance, it should be construed as requiring performance within a reasonable time.").

18

she and Edmond wanted to rent space for a film studio, they looked at Defendant's property, and Bitter told them the property was "under a loan contract but . . . it was unlikely [the borrower was] going to be able to pay the loan so that he would own it soon and be able to lease it to [her]." (Dkt. 79-1 at 11–13.)  Edmund testified similarly. (Dkt. 88-1 at 9–10.)  The cited testimony would not allow a jury to infer that, at the time Pacman made either loan (in July 2019 or July 2020), it knew Defendant could not repay the loan *because of* the illegal interest charges. The cited testimony simply establishes that, in November 2020, Bitter thought Defendant would not be able to pay the loan.  That does not suggest an illegal loan.

In support of this argument, Defendant also says Plaintiffs charged a 42% interest rate.  But, Defendant cited no record evidence for this assertion in its responses to Plaintiffs' statement of material facts. (Dkt. 95-1 ¶¶ 38, 42–43, 51–53.)  The Court thus does not consider it, even under the relaxed approach it has taken on other issues.  In its response brief, Defendant analyzes the 2020 loan and provides some calculations before concluding the interest rate exceeded 5% as allowed

under Georgia law because the loan resulted in a 42% interest rate.[8] (Dkt. 95 at 2–3, 23–25.)  This is also bridge too far and the Court will not consider facts asserted for the first time in a response brief.

In the end, it really does not matter because O.C.G.A. § 7-4-2(a)(1)(B) establishes that parties may agree upon whatever rate of interest they choose for loans over $250,000.  *Paramount Cap. Invs., LLC v. TNG Contractors, LLC*, 2019 WL 13211850, at *2 (N.D. Ga. Aug. 1, 2019).  So even if Defendant had properly raised facts to support its argument that the loans were usurious, its argument fails as a matter of law.

### 3.    Availability of Specific Performance

Defendant argues Plaintiffs' requested relief for specific performance is unavailable because Defendant has the continued right to sell the property to a third party pursuant to a right of first refusal. (Dkt. 95 at 11–14.)  Defendant's failure to follow the Local Rules prevents it from establishing this fact.  *Mitchell*, 2014 WL 12480029 at *2.  Even giving Defendant the additional leeway the Court has provided thus far,

---

[8] Defendant does not specify the rate for the 2019 loan; it just says the loan exceeded 5%.  (Dkt. 65 at 2–3.)

Defendant's response to Plaintiffs' statement of material facts makes *one* mention of a right of first refusal. (Dkt. 95-1 at ¶ 38 (explaining that Bitter dissuaded individuals from buying the property by filing and recording three successive rights of first refusal).) Defendant's brief reference to the fact Bitter recorded three rights of first refusal is insufficient to establish Defendant's ongoing right to sell the property to someone else.

In Defendant's response brief, it asserts that Pacman acknowledged that Defendant has the continued right to sell the property to a third party because Bitter said the last right of refusal document was still operative. (Dkt. 95 at 12–14.) Again, if Defendant wanted to establish that fact, it should have done so in its own statement of material facts or at least before its response brief. The Court will not consider that assertion.

But, again, even excusing Defendant's failure to follow the Local Rules, it really doesn't matter. The right of first refusal Defendant cites did not grant it a right to sell its property to a third party as Defendant suggests. Rather, it restricted Defendant's right to sell its property to a third party by allowing Pacman to swoop in and purchase the property

in place of the third party. (Dkt. 10-2 at 1 ("[I]f [Defendant] desires to accept any legitimate offer from an unrelated . . . third party to . . . purchase . . . the Refusal Property" then Pacman may opt to purchase it instead on those same terms).)

For these reasons, the Court grants Plaintiffs summary judgment on its specific performance claim.

## B.   Defendant's Counterclaim[9]

Defendant alleged Pacman breached the 2019 and 2020 loan agreements by failing to disburse certain withheld funds to creditors and vendors for water bills, repairs, and employment liens.[10]   (Dkt. 47 ¶¶ 17–18.)  Defendant asserted that the alleged breaches resulted in late fees, penalties, and interest. (*Id.* ¶ 19.)  Plaintiffs move for summary judgment on Defendant's breach-of-contract claim, arguing the

---

[9] Plaintiffs move for summary judgment on Defendant's counterclaim for attorneys' fees. (Dkt. 91 at 15.)  Defendant does not respond. (Dkt. 95.) So the Court **GRANTS** summary judgment on its claim for attorneys' fees. *Burnett*, 342 F. Supp. 2d at 1140.

[10] As noted, Defendant did not file a statement of material facts and hardly identifies where these agreements called for such an obligation. The Court has tried its best to do some of Defendant's work for it.  To the extent the Court misunderstands the facts surrounding these disbursements, the fault lies with Defendant.

settlement agreement's release provision bars Defendant's claim. (Dkt. 91-1 at 14–15.) The "waiver and release" provision releases CasKim, Pacman, SWF, and the Escrow Agent, from:

> any and all claims, causes of action, obligations, duties, liabilities or demands, whether in law or equity, whether sounding in contract, tort, fraud, statutory or regulatory violations or otherwise, whether now known or hereafter discovered, arising from (i) any and all acts, representations, occurrences and/or omissions from beginning of time through and including the date of execution hereof, (ii) any and all acts relating to the Closing of the Sale Leaseback Agreement in accordance with its terms and the terms of this Settlement Agreement, and (iii) and [sic] any business relationship with the Released Parties or statements or representations made by the Released Parties prior to the execution of this Settlement Agreement.

(Dkts. 95-1 ¶ 18; 91-3 at 45.) Plaintiffs explain that the 2019 and 2020 loan agreements were executed before the settlement agreement—August 2021—meaning Defendant released Pacman from such a claim. (Dkt. 91-1 at 15–16.)

Defendant says that, at the time Plaintiffs filed this lawsuit in May 2022, Plaintiffs had not paid the amounts withheld from the loans. (Dkt. 95 at 15.) Defendant explains that, pursuant to a loan closing statement, SWF was instructed to pay the $60,000 water bill by

December 31, 2020.[11]  (*Id.* at 16; Dkt. 47-7 at 1.)  Defendant adds that SWF was required to pay employment liens but did not do so until September 2019. (Dkt. 95 at 18.) And, as noted above, Defendant argues that the settlement agreement is unenforceable. (Dkt. 95 at 20–25.) The Court agrees with Plaintiffs.

First, as discussed above, Defendant's argument that the settlement agreement is unenforceable fails.  Second, the settlement agreement expressly waives and releases any claims arising from "any and all acts, representations, occurrences and/or omissions from beginning of time though and including the date of execution." (Dkt. 91-3 at 45.)  So, to the extent the loan agreements required Plaintiffs (via their law firm, SWF) to disburse the amounts for the employment liens and water bill by September 2019 or December 31, 2020, respectively, and Plaintiffs failed to do so, Defendant released Plaintiffs from this purported breach when it signed the settlement agreement in August 2021.

---

[11] Defendant says nothing else about the "repairs."  (Dkt. 95 at 14–18.) So the Court does not address any failure to pay in this regard.

Defendant also argues the settlement agreement instructed SWF to pay the water bill, so Plaintiffs breached the settlement agreement when it failed to pay the withheld funds toward the water bill. (Dkt. 95 at 17–18.) Defendant asks this Court to take judicial notice of the interpleader action, 22-cv-4148, in which SWF interpleaded the funds related to the water bill. Defendant says that SWF did not file its interpleader action until Defendant filed a bar complaint against SWF over its conversion of the escrowed funds. (*Id.* at 17.) Plaintiffs reply, arguing that the interpleader action resulted in a consent order and final judgment directing the disbursement of funds to pay the water bill. (Dkt. 97 at 12.) Plaintiffs also attach a declaration from John A. Christy, a lawyer at SWF, and assert that the interpleader action also resulted in a separate May 2023 settlement agreement in which Pacman, the Escrow Agent, and Defendant agreed to release each other from "all claims related to the disbursement of the Funds and the claims asserted in the Action."[12] (*Id.* at 12–13; Dkt. 97-1 at 5.) So, Plaintiffs say, Defendant waived and released any claims related to the $60,000. (Dkt. 97 at 13.)

---

[12] Defendant objects to the declaration under Federal Rule of Civil Procedure 6(c)(2) and Local Rule 7.1. (Dkt. 98 at 2.) It argues the Court

Defendant's claim that Plaintiffs breached the August 2021 settlement agreement fails for two reasons. First, Defendant did not allege a breach of the settlement agreement in its counterclaim. In fact, nowhere in Defendant's counterclaim did Defendant mention the settlement agreement. A plaintiff, or in this case, counterclaimant, may not amend its complaint through argument in a brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Second, as Plaintiffs point out, the parties executed a settlement agreement related to the disbursement of funds. Defendant says the release only applied to claims asserted in the interpleader action. But the provision expressly releases the parties from "all claims related to the disbursement of the Funds *and* the claims asserted in the

---

should not consider the declaration because Plaintiffs should have served it with their motion for partial summary judgment. (Dkt. 98 at 2.) The Court disagrees. Christy's affidavit counters points made in Defendant's response, namely that Plaintiffs *now* breached the settlement agreement by failing to disburse the $60,000 by the time they filed this lawsuit. *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp. 2d 1352, 1359 (N.D. Ga. 2010) ("The court considers reply affidavits only for the limited purpose of responding to matters raised in the responses filed by the opposing parties." (internal quotation marks omitted)). Defendant cannot have its cake and eat it too by raising new arguments (that it did not allege in its counterclaim) and preventing Plaintiffs from responding to those arguments.

Action." (Dkt. 97-1 at 5 (emphasis added).)  So the Court grants Plaintiffs summary judgment on Defendant's breach-of-contract claim.

## IV.  Conclusion

The Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on its specific performance claim and Defendant's counterclaims and affirmative defenses consistent with this Order (Dkt. 91).  Only Plaintiffs' claims for breach of contract (seeking loss of rental income) and attorneys' fees remain for trial.

**SO ORDERED** this 26th day of March, 2024.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

27