**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

CasKim, LLC and Pacman Properties, LLC,

Plaintiffs,

Case No. 1:22-cv-1864-MLB

v.

Carver Bible College, Inc.,

Defendant.

________________________________/

**OPINION & ORDER**

Plaintiffs CasKim, LLC ("CasKim") and Pacman Properties, LLC ("Pacman") move for summary judgment on their claim for breach of contract. (Dkt. 138.) Defendant Carver Bible College, Inc. ("Carver") opposes. (Dkt. 142.) The Court grants Plaintiffs' motion.

## I. Background

In July 2020, Pacman loaned Carver $605,000, and Carver executed a promissory note in that amount.[1] (Dkt. 142-1 ¶ 1.) At the same time,

[1] Carver does not dispute this fact—or any other fact contained in Plaintiffs' statement of material facts, for that matter. Carver, however,

the parties executed a so-called "Agreement for the Sale and Leaseback" in which Carver agreed that, if it failed to repay the 2020 Note by the maturity date, it would sell certain real property to CasKim for $650,000 and CasKim would then lease the property back to Carver under a ground lease. (*Id.* ¶¶ 2, 6.) The ground lease entitled CasKim to collect a late fee equal to 10% of the monthly rent for any rent not timely paid. (*Id.* ¶ 20.)

The 2020 promissory note matured in July 2021, and Carver refused to pay. (*Id.* ¶¶ 3–4.) It also refused to sell CasKim the property as required by the sale and leaseback agreement. (*Id.* ¶ 8.) Pacman thus

---

lodges a handful of "objections," all of which run afoul of Local Rule 56.1. That's because Carver's objections do not pertain to the "admissibility of Plaintiffs' facts," "point out" how Plaintiffs' citations "do[] not support" their facts, or explain how Plaintiffs' facts are "not material or otherwise fail[] to comply" with LR 56.1(B)(1). LR 56.1(B)(2)(a)(2). Rather, they consist of pure legal argument. (*See, e.g.*, Dkt. 142-1 ¶ 1 ("The statement is undisputed, however, the loan is legally enforceable . . ."); ¶ 15 ("The statement is undisputed, however, the ruling is erroneous on its face . . ."); *see also Walker v. United States, IRS*, 2009 WL 1241929, at *3–4 (N.D. Ga. Feb. 26, 2009) ("[P]laintiff must remember that a response to a statement of undisputed material facts is not an opportunity to write another brief. If the fact stated is true, admit it. If the fact is legitimately disputed, then say why, cite the evidence that supports the denial, and stop.").) So, for each of Plaintiffs' material facts, Carver either admits or fails to object properly. The upshot is Plaintiffs' statement of material facts is functionally undisputed.

began advertising the property for foreclosure. (*Id.* ¶ 9.) As the foreclosure date approached, Carver reversed course and told Plaintiffs it would sell the property to CasKim and lease it back as contemplated in the sale agreement. (*Id.* ¶ 10.) Plaintiffs withdrew the foreclosure, and the parties executed a settlement agreement, ratifying the sale and leaseback agreement. (*Id.* ¶¶ 11–12.) Months later, however, Carver reversed course yet again and told Pacman and CasKim that it would not execute the documents necessary to sell CasKim the property as required by the sale and leaseback agreement and subsequent settlement agreement. (*Id.* ¶ 13.)

Plaintiffs filed this lawsuit seeking specific performance of the parties' agreements and damages for breach of contract. (*Id.* ¶ 14.) In March 2024, the Court granted Plaintiffs partial summary judgment and ordered specific performance of the sale and leaseback agreement and the settlement agreement. (Dkts. 107, 110.) That order required Carver to "consummate the sale and leaseback of the property." (Dkt. 110 at 8.) But Carver did not comply: it has not conveyed its property, continues to occupy it, and has not paid rent or any other amounts to CasKim. (Dkt. 142-1 ¶ 21.) In October 2025, Plaintiffs filed this motion for summary

judgment on their final remaining claim—breach of the sale and leaseback agreement and settlement agreement by failing to pay CasKim rent for occupying the property as required by those agreements. (Dkt. 138.) It explained that, as of October 2025, CasKim would have been entitled to collect $422,900 in rents and $42,290 in late fees had Carver honored the leaseback agreement and subsequent settlement agreement. (Dkt. 142-1 ¶¶ 19–20.)

## II. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

## III. Discussion

The sole issues remaining in this case are whether Carver breached the leaseback agreement and subsequent settlement agreement (hereinafter the Agreements) and, if so, the amount in rents and late fees Carver owes. (*See* Dkt. 110 at 27.) Plaintiffs move for summary judgment on those issues. (Dkt. 138.) While Plaintiffs confine their arguments to those narrow questions—ones that, in the Court's view, leave little room for disagreement—Carver does the opposite. Rather than addressing Plaintiffs' straightforward arguments, Carver filed a motion for reconsideration masquerading as a summary judgment response. Not only is Carver's brief an exercise in frivolity and obstinacy, but, as explained below, it willful disregards a prior order of this Court. (Dkt. 141.) The Court is surprised by Carver's summary judgment response, transforming an otherwise run-of-the-mill summary judgment response into something that raises the prospect of sanctions. The Court concludes no issues of material fact exist as to Carver's breach of the Agreements and invites Plaintiffs to move for attorneys' fees for their

time spent responding to Carver's legally and factually baseless arguments.

**A. Carver's Summary Judgment Response**

As a preliminary matter, the Court explains which portions of Carver's response it considers and which it disregards. Shortly after Plaintiffs moved for summary judgment, Carver moved to exceed the page limit set by Local Rule 7.1, citing its need to "address[] and challeng[e] issues already ruled upon" in the Court's "wrongly decided" order granting Plaintiffs partial summary judgment. (Dkt. 140 ¶¶ 5–6.) The Court denied the request and gave Carver specific instructions on how to proceed:

> [Carver] need only address Plaintiffs' second motion for summary judgment. The Court will not reconsider its prior order under the guise of this independent second motion for summary judgment. [Carver] should focus on whether—in the light of the current status of the case—Plaintiffs are entitled to summary judgment on their only remaining claim (breach of contract).

(Dkt. 141 at 1–2.)

Carver did not listen. Instead, it devotes almost its entire brief to rehashing issues the Court already decided. The headings within Carver's brief show the extent of its unresponsiveness, arguing "The

Grant of Specific Performance Was Unlawful;" "The Dismissal of Carver's Affirmative Defenses Was Improper;" "Carver's Counterclaims Were Improperly Dismissed." (Dkt. 142 at 4–20.) Carver dedicates 20 pages to these irrelevant arguments. These arguments attack the Court's prior rulings rather than Plaintiffs' summary judgment arguments. (*See, e.g.*, *id.* at 9 ("This Court's March 26, 2024 Order granting specific performance and ordering a jury trial on contract damages for loss or rental income was outside the bounds of the law."); 10 ("The Court improperly summarily dismissed [Carver's] affirmative defenses."); 14 ("The Court's ruling dismissing Carver's usury defense . . . was wrong.").) Ultimately, the Court believes Carver's response is a motion for reconsideration under Rule 54(b) in disguise.[2] Not only is such a motion

[2] Even if such a motion were properly before the Court, Carver's arguments are mostly recycled from its previous summary judgment briefing and would not warrant relief under Rule 54(b). *See Bryant v. Jones*, 696 F. Supp. 2d 1313, 1320 (N.D. Ga. 2010) ("[Rule 54(b) relief] is appropriate where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact."); *see also Groover v. Michelin N. Am., Inc.*, 90 F.Supp.2d 1236, 1256 (M.D. Ala. 2000) ("[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly."). Carver identifies no new evidence, change in controlling law, or clear error of law or fact.

improperly before the Court, but Carver's attempt to resurrect issues long put to rest is *exactly* what the Court warned Carver not to do in its order denying excess pages. Carver may raise these issues on appeal. But it cannot derail the efficient resolution of this case by obstinately refusing to recognize the Court's prior orders.

The Court does not consider Carver's arguments that solely challenge the Court's partial summary judgment orders. It also does not reconsider any of its prior order, particularly its conclusions regarding the enforceability of the Agreements (*see* Dkt. 142 at 13–17 (Carver arguing the Court incorrectly found agreements enforceable)) or its dismissal of Carver's affirmative defenses—an issue the Court found Carver abandoned by failing to respond to Plaintiffs' arguments in its prior motion for partial summary judgment (*see id.* at 9–13 (Carver arguing the Court improperly dismissed its affirmative defenses); Dkt. 110 at 6, n. 2 (explaining Carver abandoned its affirmative defenses but nonetheless considering them to the extent possible)). The Court also does not reconsider its decision to grant specific performance of the Agreements. (*See* Dkt. 142 at 4–9 (Carver arguing the Court's improperly granted specific performance).) The Court, however, *does* consider

Carver's arguments regarding specific performance to the extent they relate to damages in Plaintiffs' motion—i.e., its argument that Plaintiffs cannot receive both contract damages *and* specific performance. (*Id.* at 5–7.) It also considers Carver's argument, raised here for the first time, that it did not breach the settlement agreement because it was not required to convey and lease back its property absent an express directive from the Court. (*Id.* at 5.)

**B. Summary Judgment on Breach of Contract Claim**

Plaintiffs seek summary judgment on Count II of their third amended complaint, which alleges Carver breached the parties' Agreements. (Dkt. 138.) "To prove a claim for breach of contract under Georgia law, a plaintiff must show (1) a valid contract, (2) a material breach of its terms, and (3) resultant damages to the party who has the right to complain about the breached contract." *Sheely v. Bank of Am., N.A.*, 738 F. App'x 603, 606 (11th Cir. 2018) (citing *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014)).[3] As the summary

[3] The Court recognizes *Sheely* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir.

judgment movants, Plaintiffs bear the initial burden of demonstrating the absence of a genuine issue of fact as to each element of their breach of contract claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs carry that burden.

The first element—a valid contract—is satisfied as the Court already found the Agreements enforceable. (Dkt. 110 at 24 ("[Carver's] argument that the settlement agreement is unenforceable fails.").) The second element—a material breach of the Agreements—is also met. Carver does not dispute that it "decided not to execute and deliver the documents to consummate the [sale and leaseback agreement] as agreed in the [s]ettlement [a]greement." (Dkt. 142-1 ¶ 13.) And the Court already held that conduct constituted a breach of the Agreements. (Dkt. 110 at 10 ("The Court finds Plaintiffs have met their burden of proving by undisputed evidence that Defendant breached the sale and settlement agreements by failing to sell Plaintiffs the property.").) That should end the Court's inquiry into the second element, but Carver argues it did not breach the settlement agreement by refusing to convey its property and

---

2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

execute the leaseback agreement because the Court "never specifically ordered Carver to do anything." (Dkt. 142 at 4.) Carver contends it had no obligation to specifically perform the parties' Agreements because the Court "simply stated that the Plaintiffs were granted partial summary judgment on their specific performance claims without directing the Defendant to perform any specific act, nor to do so within a specific time frame." (*Id.*)

No reasonable party could have understood the Court's prior order to mean anything other than that Carver—as the breaching party—was required to cure its breach and consummate the Agreements. Plaintiffs moved for summary judgment on their claim seeking specific performance of the Agreements, which required Carver to sell them the property and lease it back. (Dkt. 91 at 6.) The Court granted that motion, saying Plaintiffs were entitled to specific performance of the Agreements. (*See* Dkt. 110 at 10–22, 27 ("The Court finds Plaintiffs have met their burden of proving by undisputed evidence that Defendant breached the Sale and Settlement agreements. . . . the Court grants Plaintiffs summary judgment on its specific performance claim."). There could be no confusion.

The Court's failure to manage Carver's compliance—for example, by telling it when to complete the sale—did not rid Carver of its obligation to specifically perform the agreement. If actually confused, Carver could have sought clarification. Or it could simply have reviewed the contracts on which the Court granted Plaintiffs summary judgment on their claim for specific performance. Any reasonable review would have caused Carver to understand its duty to deliver the deed and lease documents. (Dkt. 92-18 at 2 ("Carver hereby … (iii) agrees to execute new sale documents in connection with the closing of the Sale Leaseback Agreement and to deliver the same to Escrow Agent … [and] instruct Escrow Agent to record the [deed] and to deliver the remaining sale documents to CasKim.") The Court does not believe Carver could have been confused about its obligations but rather chose to disregard the Court's order, consistent with its pattern of recalcitrance throughout this litigation.

Finally, Plaintiffs carry their burden of proving the absence of a genuine issue of fact as to the third element—damages arising from the breach. Carver does not dispute that the Court "grant[ed] Plaintiffs' claim for specific performance" of the Agreements. (Dkt. 142-1 ¶ 15.) Nor

does it dispute the amounts it owed Plaintiffs under the sale and leaseback agreement for rent and late fees. (*Id.* ¶¶ 18, 20.) And finally, Carver does not dispute that it "continues to occupy and control the Property but has not paid any rent or other amounts to CasKim." (*Id.* ¶ 21.) Thus, there is no genuine issue of fact as to the element of damages: Carver acknowledges it was required to consummate the Agreements, that Plaintiffs are entitled to specified rents and fees under the lease, and that it has paid none of them. Plaintiffs are entitled to the rents and fees as damages for Carver's breach of the Agreements.

Though not disputing any material fact, Carver argues Plaintiffs cannot recover monetary damages because that remedy is mutually exclusive of specific performance under Georgia law. (Dkt. 142 at 5–9.) It also argues that Plaintiffs "have admitted in judicio" that monetary damages would be adequate by seeking them here, and therefore specific performance is available only as an alternative remedy. (*Id.* at 7.) Not so.

Under Georgia law, damages in a breach of contract action are intended to make the injured party whole. *Liberty Capital, LLC v. First Chatham Bank*, 789 S.E.2d 303, 307–8 (Ga. Ct. App. 2016) ("In a breach

of contract case, the measure of damages is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed.'") As the Georgia Supreme Court has explained, sometimes that may require incidental monetary damages alongside specific performance:

> [S]pecific performance at the end of a protracted litigation under compulsion is practically never full performance of the contract; instead, there has been an extensive and injurious partial breach. In such a case, the court should decree the payment of damages for the partial breach that has already occurred, even though obedience of the decree will prevent the commission of further breaches.

*Golden v. Frazier*, 261 S.E.2d 703, 706 (Ga. 1979); *see Gwinnett Cnty. v. Old Peachtree Partners, LLC*, 764 S.E.2d 193, 201 (Ga. Ct. App. 2014) ("[A] trial court may award incidental damages to plaintiffs in addition to specific performance when necessary to make them whole."). That's the case here. Plaintiffs cannot be made whole without receiving *both* specific performance and incidental monetary damages. Had the Agreements been consummated, Plaintiffs would have received title to

the subject property, rents from Carver beginning in August 2021, and late fees of 10% added to each late payment. (Dkt. 142-1 ¶¶ 18–20.) Thus, to make Plaintiffs whole, specific performance is necessary—to convey title to the property and consummate the leaseback arrangement—and incidental monetary damages are necessary—to compensate them for the rents and late fees they would have received had all gone according to plan.[4] In addition to conveying the property and executing the leaseback agreement, Carver must pay Plaintiffs

---

[4] Carver relies heavily on *Sexton v. Sewell*, 830 S.E.2d 60 (Ga. Ct. App. 2019) for its contention that Plaintiffs cannot receive both specific performance and contract damages. But *Sexton* is distinguishable and comfortably coexists with *Golden v. Frazier*. In *Sexton*, sellers of real property sued buyers for reneging on a sales agreement. The court found specific performance unavailable to the sellers because they had an adequate remedy at law—earnest money damages from the breaching buyers. 830 S.E.2d at 616. Then they could simply sell the property to someone else. *Id*. at 611 ("Even assuming every parcel . . . is, in fact, unique, there is nothing 'unique' about [] the cash of potential purchasers.") That cannot happen here. Since property is unique, Plaintiffs cannot be made whole be simply finding a different property. And, even if they could, they would still be out the rents and fees Carver refused to pay. Incidental damages and specific performance were not necessary in *Sexton* but are here.

$552,500 in past rent and $55,250 in late fees, for a total of **$607,750**.[5]

### C. Moving Forward

In the light of its record in this case, the Court warns Carver that failure to specifically perform the parties' agreements and pay the sums identified above within **30 days**—for any reason—***will*** result in Carver being held in contempt of court. *See* Fed. R. Civ. P. 70 ("If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply . . . [t]he court may [ ] hold the disobedient party in contempt."); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) ("Courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

Further, the Court invites Plaintiffs to move for attorneys' fees incurred in replying to Carver's summary judgment response, if they deem such a motion appropriate. Carver's response forced Plaintiffs to re-brief issues this Court has already decided and to defend the Court's

[5] If Carver delays in specifically performing the parties' agreements, Plaintiffs may seek additional damages for each missed rent and late fee payment.

prior orders, rather than supporting its own summary judgment motion. The Court believes Carver's arguments may be sanctionable under Rule 11(b). *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998), *overruled on other grounds by Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876 (11th Cir. 2023) ("Improper purpose [under Rule 11(b)] may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings . . . sanctions [may] be imposed for excessive relitigation of an issue already decided by the court, [if] the disputed issue [was] clearly decided by the court's earlier orders, and counsel's relitigation of the issue [offers] no meritorious new arguments.") (internal citations omitted). But the Court will withhold judgment until (and if) the parties place the issue before it. Carver may file a motion under Rule 11(b) within **30 days** of this Order.

## IV. Conclusion

The Court **GRANTS** Plaintiffs' Second Motion for Summary Judgment (Dkt. 138) and **DIRECTS** the Clerk to close this case. The Court **ORDERS** Carver to specifically perform its obligations under the settlement agreement and pay the sums due to Plaintiffs within **30 days**.

If Plaintiffs so choose, they may file a motion for sanctions in accordance with the Court's instructions within **30 days**.

**SO ORDERED** this 19th day of August, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE